UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------ X

Eurovia SAS,                              :

        Plaintiff,                  :       INDEX NO.

   -against-                          :       **COMPLAINT**

The Lane Construction Corporation,        :

        Defendant.                  :

------------------------------------ X

Plaintiff Eurovia SAS ("Eurovia"), by and through its counsel, alleges the following:

<u>**SUMMARY OF THE ACTION**</u>

1.     This action arises out of Defendant The Lane Construction Corporation's ("Lane's") willful breach of an Asset Purchase Agreement signed by Lane and Eurovia on August 16, 2018 (the "APA").  A copy of the APA is attached as **Exhibit A**.

2.     Under the terms of the APA, Eurovia paid Lane $573,647,620 to purchase certain assets and liabilities.  This price was based, in part, on Lane's own estimate of the net working capital for these assets at the time of closing.  As detailed in the APA, Lane and Eurovia agreed that the final calculation of net working capital at the time of closing would be determined after closing.  Lane agreed to make a price adjustment payment to Eurovia if the final calculation of net working capital was lower than the preliminary estimate that Lane had calculated and that had served as the basis for Eurovia's payment.

3.     After closing, the parties agreed that Lane was a required to make an adjustment payment to Eurovia, but they could not agree upon the amount.  Accordingly, the parties resorted to the dispute resolution procedure that they had agreed upon in the APA.  Under this procedure, they submitted their competing calculations to an independent accounting firm with the

understanding that the accounting firm's determination would be "final and binding."  Further, once the accounting firm made its calculation, the APA required Lane to make any resulting adjustment payment within five (5) business days.

4.      The accounting firm determined on April 27, 2020 that the amount Eurovia had paid at closing overvalued net working capital by $9,790,000.  Accordingly, under the APA, Lane had a contractual obligation to pay Eurovia $9,790,000, less certain minor costs related to the fees for the accounting firm, no later than May 4, 2020 (five business days after the accounting firm's determination).

5.      To date, Lane has not made this payment and has expressly stated that it has no intention of doing so until certain unrelated demands are met.  Nothing in the APA permits Lane to withhold the adjustment payment or unilaterally to impose conditions on its obligation to make this payment.  Accordingly, Lane is in breach of the APA.

6.      Because Lane has refused to remedy its breach, Eurovia has been left with no choice but to file this lawsuit.

## PARTIES

7.      Plaintiff Eurovia is a French company that designs, builds, and maintains transportation infrastructure.  It maintains its principal place of business in Rueil-Malmaison, France.

8.      Defendant Lane is a Connecticut corporation that maintains its principal place of business in Cheshire, Connecticut.

## JURISDICTION AND VENUE

9.      Under Section 8.06 of the APA, Eurovia and Lane agreed that all disputes "relating to or arising out of this Agreement, or the negotiation, execution or performance of this

Agreement" that are not required to be submitted to arbitration "will be litigated only in, and the Parties hereby agree and consent to be subject to the jurisdiction of, the courts of the United States located in New York County, New York and in the absence of such federal jurisdiction, the Parties consent to be subject to the jurisdiction of the state court located in New York County, New York."

10.     Although Section 8.08 of the APA is a broad arbitration clause requiring arbitration of all disputes "relating to or arising out of this Agreement and the Contemplated Transactions," Lane and Eurovia expressly agreed to exempt any "disputes to be resolved in accordance with Section 1.11" from this arbitration requirement.  Section 1.11 governs the purchase price adjustment and this lawsuit arises out of Lane's refusal to comply with the dispute resolution procedure set forth in Section 1.11.  Accordingly, the claims asserted herein are expressly exempted from arbitration under the terms of the APA.

11.     This Court has federal jurisdiction over this dispute under 28 U.S.C. §1332(a)(2) because it involves a dispute between a citizen of Connecticut and a citizen of France.

12.     Venue is appropriate in this Court under 28 U.S.C. § 1391(b) because the parties agreed that all disputes arising out of the APA that are not required to be submitted to arbitration, including the instant dispute, should be resolved in this Court and the parties expressly consented to personal jurisdiction with this Court.

## SUBSTANTIVE ALLEGATIONS

### Lane Sells Certain Assets To Eurovia Pursuant To The APA, Which Calls For A Post-Closing Price Adjustment

13.     In 2018, Lane and Eurovia, with the assistance of legal counsel, negotiated the terms of an agreement under which Lane would sell certain assets to Eurovia relating to the production of asphalt paving material and the provision of asphalt paving services.

14.     On August 16, 2018 Lane and Eurovia memorialized the terms of their agreement in the APA.

15.     Under Section 1.10(a) of the APA, the negotiated "base amount" of the purchase price was $555,000,000.  However, the parties agreed that this purchase price would be adjusted based on several factors, including Lane's preliminary estimate of the net working capital as of the closing date.  Under Section 1.10(b), Lane was responsible for preparing a "good faith" preliminary estimate of net working capital and providing it to Eurovia no later than three days before the closing of the transaction.  Section 1.10(c) required Eurovia to make a payment to Lane at closing based on Lane's good faith, preliminary estimate of net working capital.

16.     Under Section 1.11(a) of the APA, Eurovia had 90 days after the closing to prepare a closing statement containing its own calculation of the appropriate final purchase price. Section 1.11(b) states that this closing statement would "become final and binding" within 45 days unless Lane objected to Eurovia's calculation in writing.

17.     In the event that Eurovia and Lane were unable to agree on the calculation of the purchase price for the final closing statement, the parties agreed upon a procedure for resolving such a dispute.  Section 1.11(d) provides that Eurovia or Lane could refer their remaining disputes to a mutually-agreeable "internationally recognized firm of independent public accountants."  Both Eurovia and Lane would make written submissions to the accounting firm and the accounting firm would then determine the correct calculation of any disputed item in the final closing statement.  The APA dictates that the accounting firm must provide a written statement of its independent calculations.

18.     In the event that this dispute-resolution procedure is required, the APA explicitly states in Section 1.11(e) that the closing statement "will become final and binding on the Parties"

when "the Accounting Firm issues its written determination with respect to the disputes relating

to such Closing Statement."  Any required adjustment payment is then due within five (5)

business days.  *Id*., Section 11(f).

19.     N*othing* in the APA gives Lane any authority to adjust or delay any required

adjustment payment.

### Post-Closing, Eurovia And Lane Are Unable To Agree
### On The Calculation Of Net Working Capital

20.     Pursuant to the terms of the APA, Lane delivered its estimated closing statement

to Eurovia on December 5, 2018.  According to Lane's calculation at the time, the estimated

purchase price was $573,647,620, which was based in part on Lane's estimate that net working

capital at the time of closing would be $98,912,000.

21.     In full compliance with the APA, Eurovia made a payment of $573,647,620 to

Lane.

22.     Following the closing, Lane and Eurovia agreed that Lane owed a price

adjustment payment to Eurovia, but they were unable to agree on the calculation of net working

capital that should be used to determine the amount of that payment.

23.     Pursuant to the APA, Eurovia and Lane therefore decided to engage an

independent accounting firm to resolve the parties' dispute regarding net working capital.  The

independent accounting firm selected by mutual agreement to resolve the dispute was Grant

Thornton.

24.     Eurovia and Lane engaged in extensive briefing before Grant Thornton regarding

the calculation of net working capital.  They submitted initial briefs on July 24, 2019, submitted

rebuttal briefs on August 19 and 21, 2019, and provided written responses to questions from

Grant Thornton on October 11, 2019, January 31, 2020, April 2, 2020, and April 3, 2020.

25.     On April 27, 2020, Grant Thornton issued its written resolution of the dispute, concluding that the correct calculation of net working capital at the time of closing was $89,122,000, which is $9,790,000 lower than the preliminary estimate of net working capital that Lane had calculated and that was used to determine the initial purchase price.

26.     Grant Thornton also determined that Eurovia owed a $32,052 payment to Lane based on the allocation of fees, costs, and expenses related to Grant Thornton's work.

**Lane Refuses To Make Any Adjustment Payment Unless Certain
Inappropriate And Unilaterally-Imposed Conditions Are Satisfied**

27.     Based on Grant Thornton's April 27, 2020 determination, and pursuant to Section 1.11(f) of the APA, Lane was required to make an adjustment payment to Eurovia no later than May 4, which is five business days after Grant Thornton issued its opinion.

28.     On April 28, 2020, Eurovia submitted a letter to Lane calculating the adjustment payment as $9,757,948.  This amount accounted for Eurovia's $9,790,000 overpayment for net working capital, as determined by Grant Thornton, less the $32,052 payment that Eurovia was required to make to Lane for fees, costs, and expenses with regard to Grant Thornton's work.

29.     On April 30, 2020, Lane responded to Eurovia's request for the contractually-required adjustment payment with a letter stating that Lane would not make "any payment in regard to the adjustment."  Although Lane did not dispute Eurovia's calculation that Lane owed $9,757,948 to Eurovia, Lane unilaterally decided that it would not make any such payment until the parties resolved certain purported "unresolved items of reimbursement" that "do not constitute Net Working Capital as defined by the Parties' Asset Purchase Agreement" and "were not considered by Grant Thornton as part of its review of the Purchase Price Adjustment under Section 1.1[1] of the APA . . ."  These items, which are irrelevant to the calculation of the price adjustment payment required under Section 1.11 of the APA, relate to "miscellaneous expenses"

that the parties had already agreed would not be submitted to Grant Thornton in order to calculate the required purchase price adjustment. Lane unambiguously states that it will "withhold issuance of any payment towards the Purchase Price Adjustment to [Eurovia]" until Lane's demands are met.

30.     Nothing in the APA gives Lane the right to withhold the price adjustment payment simply because of a purported dispute that is independent of the purchase price adjustment required under Section 1.11(f). The APA states that Grant Thornton's calculation is "final and binding" and Section 1.11(f) unconditionally requires payment of the price adjustment payment within five business days of the parties' receipt of that calculation. Nevertheless, Lane evidently intends to hold this contractually-obligated payment hostage until its meritless demands are met.

31.     To be clear, Eurovia disputes that the APA, which "constitute[s] the entire agreement between the Parties" regarding the sale transaction under Section 8.04 of the APA, obligates Eurovia to make the payments that Lane now seeks to impose as a condition-precedent to Lane's own contractual obligation to make the price adjustment payment. However, to the extent that Lane genuinely believes it is entitled to such compensation, Section 8.08 of the APA sets forth the procedure that Lane must follow. That Section requires the parties to meet and confer about Lane's claims and, if necessary, for Lane submit them to arbitration. That procedure does *not* allow Lane to withhold the price adjustment payment.

32.     The deadline for Lane to make the price adjustment payment expired on May 4, 2020. To date, Lane has continued to refuse payment.

## COUNT I: BREACH OF CONTRACT

33.     Eurovia refers to and incorporates all allegations in paragraphs 1 – 32.

34.     The APA is a binding contract between Eurovia and Lane that was thoroughly negotiated with the assistance of competent legal counsel and is fully supported by consideration on both sides.

35.     The APA required Lane and Eurovia to determine whether a post-closing price adjustment payment was required and the amount of that payment.  If the parties were unable to reach agreement on that payment, the APA dictates that the parties must submit the dispute for resolution by an independent accounting firm and that the independent accounting firm's resolution of that issue will be "final and binding."  Once the independent accounting firm resolves the dispute, payment of the price adjustment payment is due within five business days.

36.     Pursuant to the APA, Lane and Eurovia submitted their dispute to Grant Thornton, which determined on April 27, 2020 that the correct value for net working capital was nearly $9,800,000 less than the amount for which Eurovia had paid at the time of closing.  Thus, Lane owed a nearly $9,800,000 payment to Eurovia, less the $32,052 that Eurovia owed to Lane regarding the cost of Grant Thornton's work.  The resultant $9,757,948 price adjustment payment from Lane to Eurovia was due on May 4, 2020, without exception.

37.     On April 30, 2020, Lane stated in a letter that it would not make this payment and, in fact, no payment has been made.  Accordingly, Lane is now in breach of Section 1.11 of the APA.

38.     Eurovia has been damaged in the amount of $9,757,948 by Lane's refusal to make this required payment.

## PRAYER FOR RELIEF

WHEREFORE, Eurovia prays for judgement as follows:

   A.  Declaring that Eurovia is owed $9,757,948 under Section 1.11 of the APA; and

B.  Awarding Eurovia damages in the amount of $9,757,948; and

C.  Awarding Eurovia's reasonable costs, including attorneys' fees; and

D.  Awarding such monetary, equitable, or other relief as the Court may deem just and

proper.


Dated:  New York, New York.
        May 13, 2020

                                        /s/ *Brian Raphel*
                                        Brian Raphel
                                        DECHERT LLP
                                        1095 Avenue of the Americas
                                        New York, NY 10036

                                        *Of Counsel*
                                        Michael C. Doluisio
                                        DECHERT LLP
                                        2929 Arch Street
                                        Philadelphia, PA 19104


17257412.3.LITIGATION